| 85 | 713 |
| 87 | 10 |
| 87 | 11 |
| d87 | 76 |

Simpson County v. Thomas J. Buckley et al.

1. County Seat. *Removal. Injunction. 'Compromise decree. Res adjudi-cata.*

   A decree dismissing a suit to restrain the removal of a county seat, resulting from a compromise, is not a bar to a similar suit by other persons not parties nor privies to, nor consulted in, the previous suit.

2. Same. *Board of supervisors. Judgment of. Collateral attack. Constitution 1890, sec. 259.*

   An order of the board of supervisors declaring the proposition for a removal of the county seat carried, from which no appeal was taken, may be collaterally attacked in a suit to restrain execution of the order, where the record of the board shows that its action was in excess of its jurisdiction because the proposition was not carried by a two-thirds vote of all the qualified electors in the county, as required by Constitution 1890, sec. 259, when the place to which the county seat is to be removed is a greater distance from the geographical center of the county than the place where it was already located.

3. Same. *Evidence. Number of voters.*

   Evidence is admissible to show the number of names remaining on the registration books of the county, after all proper erasures, on a contest as to whether the removal of a county seat was carried at an election on the subject by the requisite majority of all the qualified voters of the county.

4. Same. *Simpson county election. Laws 1900, ch. 149, p. 201.*

   The county seat of Simpson county was not removed from Westville to Edna, now Mendenhall, by the election held under Laws 1900, ch. 149, p. 201, involved in this suit.

From the chancery court of Simpson county.

Hon. Robert B. Mayes, Chancellor.

Buckley and others, the appellees, were complainants in the court below; Simpson county and the members of the board of supervisors thereof were defendants there. From a decree in

complainants' favor defendants appealed to the supreme court.
The facts are stated in the opinion of the court.

[For a prior report of the case, see *Simpson County* v. *Buck-
ley,* 81 Miss., 474.]

*C. M. Whitworth, Alexander & Alexander,* and *George B.
Power,* for appellant.

What is the jurisdictional fact in this case? The jurisdic-
tional fact is that which gives authority to a tribunal to adjudge
as between the parties. The right to proceed in the determina-
tion must not be confused with the correctness of the judgment
rendered. *United States* v. *Arredondo,* 6 Pet., 709; *Rhode
Island* v. *Massachusetts,* 12 Pet., 718; 17 Am. & Eng. Ency.
Law, 1041, 1056, sec. 19.

The presence of authority to proceed in the particular case is
jurisdiction. Elliott on Appellate Procedure, secs. 12, 499.
*Turner* v. *Conkey,* 17 L. R. A., 509.

The jurisdictional fact in this case is the petition by two
hundred electors. That gave the board power to sit as a special
tribunal. That started the machinery of the special court. It
is almost universal that the jurisdictional fact is something that
the court, or tribunal, has to pass on initially. It is the almost
universal rule that county boards or commissioners obtain their
jurisdiction to hear and determine as to removal of county seats
by a petition of the taxpayers or voters. 11 Cyc., 373.

If we are correct in this view, then the order is not subject to
collateral attack, except for fraud, and this we understand to be
the decision in *Hinton* v. *Perry County,* 84 Miss., 536, and in
the former appeal in this case.

If it be held that the jurisdictional question is whether Edna
(now Mendenhall) was nearer the center or that removal car-
ried by a two-thirds majority of the qualified electors, we still
say that that is sufficiently found in the order. It recites that
"it appears to the satisfaction of the board that removal carried
by receiving a majority of the votes cast," etc.

Now the rule is that in doubtful cases courts treat defects as errors instead of jurisdictional defects.    17 Am. & Eng. Ency. Law, 1066.    And mere looseness and informality in orders of inferior courts will never be held fatal.    Great liberality must govern.    B. &. A. Dig., 671; Works on Courts, 88, 89, 145.

The finding that removal carried is necessarily a finding that it received the requisite vote.    To so construe the word "carried" is not to indulge a presumption in favor of the order.    It is to construe a word and determine what its use indicated.    It is the word used in the statute.

It is not sufficient for complainants to show that the order is void.    They must show that the election did not carry for removal.    In any election the vote is the material thing:   *Pradat v. Ramsey,* 47 Miss., 24.    It was not even essential that the board make any order.    The removal follows "if it appears that the removal has carried."    The finding of the board is in the exact language of the statute.

Chancery treats as done what ought to have been done.    It is under this rule that equity will not relieve against a void judgment unless complainant shows merits—*i. e.,* that he does not owe the debt, or that on a second trial a different judgment would result.    *Stewart v. Brooks,* 62 Miss., 492; *Newman v. Taylor,* 69 Miss., 670.    And the justice and validity of his cause must be shown to a high degree of certainty.    *Cotton v. Hiller,* 52 Miss., 7; *Greene v. Bank,* 73 Miss., 542.

Complainants recognize this rule and averred in the bill that Edna was further from the center and that it did not carry by two-thirds majority.    These averments are denied by the answer, and complainants endeavored to prove them, but failed. They failed to show by any competent evidence the center of the county.

There was not sufficient proof as to the true number of voters in the county.    The answer denied that Edna did not get two-thirds of all the votes in the county.    The only proof at all was the registration book.    The insufficiency of this has been more

than once announced by this court. *Madison County* v. *Brown,* 67 Miss., 694; *Bew* v. *State,* 71 Miss., 1. As complainants' counsel relied on the case of *Hawkins* v. *Carroll County,* 50 Miss., 755, on this point, we suppose they overlooked the fact that Code 1871, § 373, made registration *prima facie* evidence of the right to vote.

Since the order has been executed and removal accomplished, the county seat and records cannot be moved to another place without a showing that the removal was fraudulently accomplished. The board can only canvass the result and direct the removal; but if the removal in fact carried, the absence of an order or an irregular order could not defeat the will of the people manifested at the polls. If the removal was accomplished by fraud (this involving, of course, illegality), the mandatory injunction to relieve against the fraud would lie; but in the absence of fraud the question is not whether the order is void, but, Did removal carry? The court finds a county seat at Edna and is asked to remove it to Westville, because the election did not carry. Surely, in the absence of fraud and of affirmative evidence that removal did not carry, the removal back will not be decreed. This is why the opinion in the Perry county case distinguished this case on the sole ground that fraud was charged.

It is argued that the decree in the Weathersby suit is not *res adjudicata,* because procured by collusion. The board was not a party to, or even cognizant of, the compromise. The class of litigants selected attorneys, and they brought the suit in the name of Weathersby. They selected Weathersby as their representative. Why should they not be bound by his acts and omissions? They sued out an injunction which bound the board of supervisors. A decree for complainant would have finally concluded the county. The estoppel should be mutual.

The general doctrine of the conclusive effect of decrees in class suits is discussed in Freeman on Judgments, sec. 178. See also Works on Courts and Jurisdiction, 144. If it is true

that a judgment is conclusive, although resulting from ignorance or stupidity of counsel or the blunders of litigants, a decree ought to be conclusive when litigants, either from indifference or for a consideration, decline to press a suit and allow a court to render the proper judgment consequent upon their neglect.

If this decree is not binding, what is there to hinder one taxpayer from filing a suit and enjoining, and after a year or two, just before a final hearing, dismissing, and then repeat the same process, and so on, *ad infinitum?* This reasoning is strongly set out in 45 Cal., 6.

The law favors compromises, and compromise decrees bind parties and their privies; and as there is no evidence that the suit was collusive or the compromise fraudulent, the decree ought to be held binding.

Surely it cannot be argued that the statute means that no second election can be had unless two-thirds of the electors vote for removal. To so hold would be to defeat the right of a contesting place, although nearer the center, to be chosen on a second election by a mere majority. The most that complainants can, on their own theory, say is, in the language of the act, that "it appears that removal has carried, but no point has secured the number of votes necessary to a choice as required by sec. 259 of the constitution." In that case the only proper order should be that the second election should be held to see if Edna can secure the requisite vote.

Similar statutes and constitutional provisions have been construed by courts of other states. Our opinion is fully sustained by the opinion of Mr. Justice Brewer in the case of *County Seat of Osage County,* 16 Kan., 296.

*J. A. P. Campbell,* on the same side.

Many more than the two hundred qualified electors of the county required by the statute petitioned the board of supervisors to order an election on the question "of the removal of

the seat of justice of said county from Westville to some convenient point on the Gulf & Ship Island Railroad." The order was made accordingly, and the election was held, at which nine hundred and four votes were cast, and six hundred and forty-four of them (more than two-thirds) were for removal, and six hundred and twenty-five were for removal to Edna (now Mendenhall), a point on the railroad mentioned. Although opportunity was given by the board for all other points to compete, no other did. In this state of case the board ordered removal to Edna, and it was effected. Any citizen might have been heard by the board in opposition and might have appealed from its action to the circuit court and to this court. No such course was taken. Buildings for county purposes were procured at Edna, offices were opened there, courts were held, taxes were levied and collected, tax sales were made, instruments were recorded, marriage licenses were issued; in fact, all public business was done, and bonds to the amount of $25,000 were issued and sold to raise money to pay for courthouse and jail. This suit was brought and a decree was made to undo all, and a return of the records to Westville within a short time was commanded. The decree is sought to be maintained on the ground that Edna is not toward the center of the county, and that two-thirds of the electors of the county did not vote for removal to that point. There is in the record some evidence which, if competent, tends to show that Edna is not toward the center of the county, but there is none to show how many electors were in the county. How can the court say that six hundred and twenty-five voters were not two-thirds of the electors of the county? The record of the board does not affirmatively show what proportion of the electors of the county the six hundred and twenty-five who voted for removal to Edna represented, but it does show that more than two-thirds of the nine hundred and four votes cast were for removal to Edna, and on this it ordered the removal. To make this order it must have appeared to the board that the six hun-

dred and twenty-five who voted for removal to Edna were two-thirds of the electors. of the county or that Edna is toward the center. What evidence the board had before it is not shown. It was not necessary for the record to contain the evidence. All that was required was that it should appear that the requisite number of votes had been given. The board was to be satisfied. The matter was committed to it. Had there been a contestant before the board, the evidence might have been made of record by bill of exceptions and preserved for the courts to pass on.

The petition of the requisite number of qualified electors of the county for the election invested the board with full jurisdiction of the matter of removal and devolved on it the duty to decide all questions in the further progress of the movement. It must be presumed in favor of its action that it had before it the evidence which warranted the order it made. This rule applies to courts of special and limited jurisdiction as well as to other courts. No presumption is indulged in favor of their jurisdiction over the matter; but, that appearing, the same presumptions apply to them as to other courts. *Cason* v. *Cason,* 31 Miss., 578, repeatedly cited and approved; *Monk* v. *Horne,* 38 Miss., 100, 103; *Cannon* v. *Cooper,* 39 Miss., 784, 789; *Pollock* v. *Buie,* 43 Miss., 140, 151; *McWilliams* v. *Norfleet,* 60 Miss., 988, 995.

If Edna is toward the center of the county, or if the six hundred and twenty-five voters for removal to Edna constituted two-thirds of the electors of the county, the removal was valid. The commissioners of election reported to the board that nine hundred and four votes were cast, and that six hundred and forty-four were for removal, and six hundred and twenty-five for removal to Edna. The board must have been satisfied, either that Edna is toward the center or that the six hundred and twenty-five voters were two-thirds of the electors of the county. In no other state of case could it have lawfully made the order for removal. Every intendment should be made in favor of the action of this tribunal composed of five freeholders repre-

senting the five districts into which the county is divided, provided for by the constitution, intrusted with most important functions affecting the public welfare, and to which the law committed this matter of ascertaining and effecting the will of the electors of the county. Certainly, every admissible intendment should be made to avoid the disaster of a disturbance of the action of the board. It would be far better to commit the final decision of the matter to the board, unless fraud in its action was shown, than to tolerate interminable controversy in the courts over the whereabouts of the county seat.

If wrong in all of the foregoing, still the decree is erroneous and should be reversed. Removal of the seat of justice was carried by a majority of electors participating in the election. Six hundred and forty-six electors of the county voted for removal from Westville, and according to sec. 259 of the constitution that authorized removal, and if Edna be not toward the center and two-thirds of the electors of the county did not vote for removal to that point, still removal from Westville was carried by six hundred and forty-six voters of nine hundred and four who voted, and it was the duty of the board, if it did not appear that any point had received the number of votes prescribed by the constitution, to order another election to determine to what point removal should be made. If Edna is toward the center or two-thirds of the electors of the county voted for it, the failure of the order of removal to so state did not deprive the valid election of its legal effect; but if it did, it did not annul the majority vote for removal from Westville. That was certainly determined by the election.

In this view of the case the order of removal to Edna was merely premature, and a new election as to place should have been ordered; and as it was not, it should now be made. In this point of view the decree should be reversed and the cause remanded. It should have been a decree *nisi*—i. e., unless in a reasonable time the board of supervisors should order an election to determine whether Edna shall be the seat of justice.

The statute contemplated that there might be only one place voted on for the seat of justice. Its language is "point or points competing for the location." The board gave opportunity for all to compete. Edna alone did, and it would seem to be proper to limit the new election to the question of removal to Edna, but certainly to some competing point, if any, on the Gulf & Ship Island Railroad, as it then was being constructed through the county.

*R. N. Miller*, and *Watkins & Easterling*, for appellees.

The order of the board is as follows: "The board having carefully considered the report of the election commissioners rendering a tabular statement of the vote cast for 'removal,' 'no removal,' and the town of Edna, at the recent election, held on the 26th day of May, 1901, in accordance with a previous order of the board, and it appearing to the satisfaction of the board that 'removal' carried by receiving a majority of votes cast at said election, it is therefore moved and ordered by the board that the seat of justice of Simpson county be moved to the town of Edna."

The board of supervisors of Simpson county, particularly in passing upon the question of "removal" of the seat of justice, and alone authorized to act in the matter at all by the act of 1900, was a court of "special and limited jurisdiction." Brown on Jurisdiction, secs. 19, 20b; *Root* v. *McFerrin*, 37 Miss., 17; *Ballard* v. *Davis*, 31 Miss., 525.

Being a court of special and limited jurisdiction, the jurisdictional facts—that is, those facts necessary to give it power to act—must affirmatively appear on the record of such court. No presumptions can be indulged in favor of its jurisdiction. Unless these jurisdictional facts appear of record, its judgment is absolutely void. *Root* v. *McFerrin*, 37 Miss., 17; *Ballard* v. *Davis*, 31 Miss., 525; *Hawkins* v. *Carroll County*, 50 Miss., 755; *Woodruff* v. *Okolona*, 57 Miss., 806; *Bolivar County* v. *Coleman*, 71 Miss., 832; *Byrd* v. *State*, 1 How. (Miss.), 163;

*Marks* v. *McElroy,* 67 Miss., 545; *Dyson* v. *State,* 26 Miss., 362; Lawson on Presumptive Evidence, 30, rule 9; 4 Rose's Notes of U. S. Reports, 331, and authorities cited.

All the cases on liquor elections in this state are to the same effect. The jurisdictional fact, which the board must have determined before it could remove the seat of justice on a majority vote, was that the removal "was toward the center of the county."

This it failed to do or even consider. The record shows that the question of whether the removal was toward or from the center was never presented or considered by the board. Its order of removal was therefore absolutely void, if the constitution of Mississippi is of force in Simpson county.

The only other question presented is as to the effect of the consent decree of the chancellor in the case of *Weathersby* v. *Board of Supervisors.* Prior to the institution of this suit one Weathersby filed a bill attacking the order of removal; and the record discloses, without any effort at contradiction, that Weathersby died, and his widow, being assisted in the matter and advised by several gentlemen (none of whom are parties to this suit), undertook to prosecute the suit until it was ready for trial, when she and her attorney were bought off; and for money paid them and land conveyed to them she and her attorney sold out.

The decree in the Weathersby case was not only a consent decree, but a decree purchased outright by those interested in removal, and the board of supervisors knew this to be the case. This record shows that the members of the board were all "removalists" except one, who voted "No" on every proposition except the final order of removal, and that this change of heart was the result of deliberately buying his sympathy by the same crowd. This the member frankly confesses. In truth, no uglier picture ever appeared of rank desertion of trust by chosen guardians of the people's rights than appears in this record. They bought out Mrs. Weathersby, got a decree, and hurried

the records of the county off in the night and hauled them into Mendenhall between dark and daylight. They rushed off from a good brick courthouse and jail with the public records in the night time for fear some other citizen would interfere to prevent this patent violation of the law and the constitution. Under these circumstances, what effect as estoppel or *res adjudicata* has the decree, purchased as it was?

We assail the decree on the ground that it was first not rendered in a representative suit, a suit filed by Weathersby alone, and not in behalf of others as shown by the bill; and, second, if it was a representative suit, it was not conducted to a conclusion in good faith. It is not a decree which speaks the action of the court, it is not the judgment of the court, but is a purchased agreement.

Argued orally by *J. A. P. Campbell,* for appellant, and by *R. N. Miller,* for appellees.

TRULY, J., delivered the opinion of the court.

On a former appeal of this case—81 Miss., 474 (33 South. Rep., 650)—it was held that the complainants, appellees here, had such an interest in the attempted removal of the county site as permitted them to invoke the power of equity to restrain an illegal removal. The averments of the bill of complaint were held sufficient to withstand demurrer. Answer was required, and the cause was remanded, that it might be heard and determined on the merits. Upon final hearing, after proof taken, the chancellor decreed that the attempted removal of the county seat from Westville to Edna (now called Mendenhall) was illegal; that the orders of the board of supervisors directing such removal were null and void. The injunction against the removal was perpetuated, and the board of supervisors and those county officers who were joined as defendants were ordered to return all official records of the county to Westville, from whence they had been removed in pursuance of said void orders. From that decree this appeal is prosecuted.

A succinct statement of the facts material and necessary to a proper understanding of the questions here presented for decision is as follows: In 1900 the legislature of the state passed an act (ch. 149, p. 201) authorizing the board of supervisors of Simpson county, "upon the presentation before them of a petition signed by two hundred qualified electors of said county, to order an election submitting to the legal voters the question of the removal of the seat of justice of said county from West-ville to some convenient point on the Gulf & Ship Island Rail-road;" and after providing the form of the ballot to be used, so that an elector could on the same ballot vote for or against removal and also signify his preference for any point competing for the location of the seat of justice, the act proceeds: "If, after the votes cast in said election have been canvassed by the board of election commissioners, it appears that removal has carried, but no point has secured the number of votes necessary to a choice, as required by sec. 259 of the constitution of the state of Mississippi, then the board of supervisors of said county shall order another election, and give ten days' notice of the same, for the purpose of determining as to the point of location only, and the two points which received the highest number of votes at the first election shall be submitted to be voted upon, and the board of supervisors of said county shall continue to order elections until some point has secured the majority required by the constitution of this state; the point securing such majority shall be declared the permanent seat of justice of said county." The petition in proper form and sufficiently signed having been duly presented, the board ordered an election, which was regularly and fairly held, and which, as appears by the canvass and return made by the election commissioners filed with the board of supervisors, resulted as follows: Total votes cast, 904. For removal, 644; against removal, 260; for removal to Edna, 626—Edna being the only point competing for the location of the county site and the only point placed on the ballot to be voted for. Upon the coming

in of this report, the board of supervisors passed an order re-
citing that after careful consideration of the tabular statement
of the vote cast, it "appearing to the satisfaction of the board
that-'removal' carried by receiving a majority of the votes cast
at said election, and that the town of Edna received a majority
of the votes cast at said election," it was therefore ordered that
the seat of justice of the county be moved to the town of Edna.
Before this order of removal could be carried into effect, one
Weathersby, a citizen and taxpayer of said county, obtained
from the chancery court an injunction restraining the removal
on the ground that the removal of the seat of justice had not
been authorized by the affirmative vote of the proportion of the
qualified electors of the county required by Constitution 1890,
sec. 259. Subsequently a final decree was rendered dissolving the
injunction and dismissing the bill of complaint filed by Weath-
ersby. Immediately upon the termination of the Weathersby
suit the board of supervisors procured a temporary courthouse
at Edna, and removed the seat of justice and all the records
of the county to that point. Thereupon Buckley and some hun-
dreds of the taxpayers of the county (appellees here) filed their
bill of complaint, setting out above facts and charging that the
board of supervisors had sold bonds for the purpose and then
were about to proceed to the construction of a new courthouse
and jail at Edna; that they intended to sell the county build-
ings at Westville, and invest the proceeds thereof, together with
the proceeds of the county bonds, in the new public buildings
which they contemplated erecting at Edna. An injunction re-
straining such action by the board was prayed and granted.
The averments contained in the bill on which the granting of
the injunction was based were these: That at the election which
had been ordered by the board of supervisors pursuant to ch.
149, p. 201, Acts 1900, submitting the question of removal of
the seat of justice to the electors of the county, "removal" had
not "carried" within the meaning of that act and sec. 259 of
the constitution, because at the election so holden less than two-

thirds of the qualified electors of the county had voted for removal; that Edna, now called "Mendenhall," was further distant from the center of the county than Westville, and, this being true, in order to authorize the board of supervisors to make any order in the premises, it was necessary that two-thirds of the qualified electors of the county should vote therefor; that the order of the board of supervisors directing removal not only failed to show that the constitutional majority did vote for the removal, but expressly negatived the existence of that fact.

It will be noted that the order directing the removal of the county site to Edna affirmatively shows that "removal" received "a majority of the votes cast at said election," without stating that that number was a two-thirds majority of the electorate of the entire county. It further appears that "the town of Edna received a majority of the votes cast at said election." Upon final hearing the chancellor decreed as issues of fact that the number of votes cast at the election for "removal" did not constitute two-thirds of the electors of the county qualified to vote at the date of the election, and that Edna was further away from the center of the county than was Westville, and rendered a final decree annulling the action of the board, as hereinbefore set out.

Upon this appeal it is urged by appellants that the Weathersby suit was a "class" suit; that Weathersby was, in the eyes of the law, a representative of all other citizens or taxpayers occupying a similar relation; and that an adjudication against him in his representative capacity is conclusive against all others, including these appellees. We cannot concur in this view. The facts of this case do not bring it within the scope of the beneficent doctrine invoked. The decree of the chancery court in the case of *Weathersby* v. *Board of Supervisors* was not such a final determination of the legality of the order for removal of the county site as to preclude the present appellees from prosecuting this suit. The rule of law by which a representa-

tive suit is held to preclude the bringing of other similar suits is based upon the assumption that all parties in the same class are privies to the original complaint, and occupy the same relation with regard to the subject-matter involved, and therefore one litigation, when honestly and fairly conducted to a final termination, is considered as conclusive of all others. The wisdom of the rule is undeniable, in that it prevents the institution of multiplicity of useless, frivolous, and vexatious suits about a question of mutual, general, or public interest which has already been fairly considered and finally adjudicated by a court of competent jurisdiction. But the fundamental idea on which the principle is based is that the original suit must not only be honestly instituted, with the real intention of settling the matter, but must be honestly prosecuted to a final termination as well. The Weathersby case was not such a suit. While honestly instituted and fairly conducted, it was not prosecuted to a final adjudication. The express terms of the final decree rendered therein show that it was either a consent decree or the result of a compromise. It says that "the complainant agrees not to further prosecute the suit, and the defendants agree that the complainant and the estate of said T. H. Weathersby and their sureties be absolved from all liability for damages because of the suing out of the injunction herein." It shows that the complainant not only did not prosecute the suit to a conclusion, but that it was abandoned, and that in consideration of such action the complainant and sureties were released from the liability which would necessarily have flowed as a legal incident to a final decree adverse to them and dissolving the injunction which had been granted. It is true that the decree recites that the case was set down for hearing "for the purpose of finally settling the merits of the case," and that the court ordered that "said bill be dismissed as an adjudication of the merits of the questions involved in this controversy." But when these recitals are considered in connection with the statements above noted that the complainant had abandoned his suit, it becomes

manifest that it is not, in a legal sense, such final adjudication as should rightfully preclude others from subsequent prosecution of any rights they may have in the subject-matter of the litigation. The principle of law involved in this question is elemental, and we deem citation of authority unnecessary, especially in view of the fact that there is no dispute as to the soundness of the legal proposition, the contention being as to its applicability to the facts disclosed by this record. The express recitals of the decree show that appellants are not entitled to set up the bar against the prosecution of further suits which is interposed in certain instances by the legal principle in question, and the correctness of this is made more manifest by a reference to the testimony where the negotiations which resulted in the abandonment of the Weathersby suit by the complainant are detailed with particularity. This decree, undeniably the result of a compromise, though perfectly fair in all its features, is no bar to a similar suit brought by parties not privy to, nor consulted in reference to, the original action.

The next contention presented by appellants is that as no direct appeal was taken from the order of the board of supervisors, its judgment cannot now be collaterally attacked. The argument is based upon the settled doctrine that, even though a court be one of special or limited jurisdiction, so that it is necessary for the jurisdictional facts authorizing its judgment to be recited affirmatively in the judgment, still, when this is done, the same presumption of correctness attaches to the decision of such special tribunal as does to those of courts of general jurisdiction. So it is said as one of the orders of the board in question does expressly recite the presentation of a petition, duly and properly signed, as required by ch. 149, p. 201, Acts 1900, that this was the only jurisdictional fact requisite to vest power in the board and authorize it to take all necessary action in regard to the removal of the county site; that all other questions are simply evidential, and need not be set out specifically in the judgment. It is said that, the board

being vested with jurisdiction by the filing of a proper petition, its subsequent actions are presumed in law to be correct, and cannot be collaterally questioned or assailed; and, further, that, jurisdiction having once attached, the failure of the board to recite either that two-thirds of all the qualified electors of the county voted for removal, or, in the absence of such fact, that Edna, the proposed county site, was nearer the center of the county than Westville, is simply a failure to embody in the judgment the evidence on which the judgment was rendered, and, under the general presumption of correctness of judgments, cannot be ground of attacking its validity or force, because, it is urged, in the absence of a recitation of the evidence, the correctness of the judgment of the special tribunal will be presumed, and the judgment will be dealt with as if proof was before the board of supervisors showing either that two-thirds of the qualified electors did vote for removal or that Edna was nearer to the center of the county than was the present county site.    The soundness of the general doctrine that where the jurisdictional facts authorizing action by a special court or tribunal of limited jurisdiction are affirmatively set out in the judgment such judgment is entitled to the same presumption of correctness and validity as attaches to judgments of courts of general jurisdiction is undeniable.    But counsel for appellants misconceive what constitutes the jurisdictional facts in the case at bar, if in truth that doctrine has any application here.    Prior to the adoption of the constitution of 1890 the location and removal of county sites was a question submitted solely to legislative discretion and will.    *Monet* v. *Jones,* 10 Smed. & M., 237.    By sec. 259 of the constitution, county sites throughout the state became fixed and established at the places where they were then located.    There they must remain until removed in the manner and by following the method indicated by that section—not by legislative enactment, not by order or judgment of the board of supervisors, but by the affirmative vote of the electorate of the county concerned.    If the county site is to be re-

moved to a point more distant from the center of the county than where now located, it must and can only be done when two-thirds of all qualified electors of the county shall evidence their desire for such removal by an affirmative vote therefor. Or, if the removal is to a point nearer the center of the county, and therefore presumably more accessible to the greater portion of the inhabitants of the county, such removal will be authorized by a majority vote of those who participate in an election specially held for the purpose of submitting that question to the arbitrament of the ballot. In either case the fact, and the only fact, which can give the legislature, or the board of supervisors, or any other legislatively designated or selected tribunal, jurisdiction to pass any order in the premises, is the affirmance of the required constitutional majority. It is not the legislative enactment; it is not the expressed approval of the people voting therefor. The method by which the will of the people shall be ascertained is submitted to legislative discretion, but the will of the people affected by the contemplated removal is at last the only power by which a county site can be removed. In the instant case the presentation of a proper and sufficiently signed petition to the board vested it with no jurisdiction to make any order of removal. It was within the legislative province to have itself called an election for the purpose of submitting the question to a vote or to have empowered the board of supervisors to call an election without the intervention of any petition; but no power can avoid or evade the constitutional provision that no order of removal can rightfully be made by any court or tribunal until authorized by the affirmative vote of the qualified electors of the county.

It is said that, as the presentation of the petition vested the board of supervisors with jurisdiction to call an election, this necessarily carried with it the power to decide how the election resulted; that if it had jurisdiction to say that removal did not carry, it had equal power and right to decide that removal did carry, and, being vested with power to decide, its decision must

stand until reversed on direct appeal. But the premises are unsound, and the deduction necessarily erroneous. The power of the board to order a removal of the seat of justice did not depend on the recitation by the board in its order that two-thirds of the electors voted for removal, but upon the actual existence of the concrete fact. If such number did not vote for removal, the board had no authority to make any order, for the reason that the power by which alone the location of a county site can be changed cannot be put in motion except by the positive action of the voters. Until this action is taken, the power remains dormant, and the county site cannot be moved. If the constitutional majority fail to vote favorably on the question of removal, no order is required, because the contingency on which alone a change can be made has not happened, and the jurisdiction of the board over the subject-matter has never attached. As pertinent in this connection, and involving the same question of constitutional construction, we refer to the case of *Hawkins* v. *Carroll County,* 50 Miss., 735. In that case the exact point was whether the county could lawfully issue bonds in order to grant aid to a railroad. The then existing constitution provided that authority to give such aid should not be granted "unless two-thirds of the qualified voters of such county . . . at a special . . . or general election shall assent thereto"—practically, it will be noted, identical with the provision under review in the case at bar. In that case, as in this, the board of supervisors held that the project had carried, and that, therefore, it was empowered to order the issuance of bonds. In that case, as in this, it was contended that this judgment was conclusive. After elaborate argument by a glittering array of eminent counsel, the court, in the course of an exhaustive discussion of the entire subject as to the two contentions above referred to, held as to the first: "If empowered so to do, it must conform to the conditions prescribed in the law. By the statute the board of supervisors is made the organ and instrumentality of the county. But its power does

not come into existence except upon certain conditions, which are of the nature of conditions precedent. Those are an approving vote of the constitutional majority at an election assenting thereto. If the requisite notice of the election has not been given, or it has not been held at the proper time and place, or if no election at all has been held, or, if held and the proposition has not received the requisite vote, then the terms upon which the board can put in motion its statutory power to make the subscription and issue bonds have not come into existence. If these or any of these recitals are true, a subscription would be invalid and the bonds would be without warrant of law to uphold them." As to the second: "It has been urged also that the decision of the supervisors that the project was approved is conclusive on the county. That which confers the authority on the board is the vote of the two-thirds. The canvass of the votes and decision of the board is but evidence of the fact. If the requisite favorable vote has been actually given, then the condition has occurred upon which the county can insist upon the aid being given, and the railroad corporation has a right to demand the subscription and bonds. The conclusion of the board that the majority has been one way or the other is not conclusive on the taxpayers or the railroad corporation. The authority to the board passes or fails to pass by the vote." See *Doan* v. *Board of Com'rs,* 3 Idaho (Hasb.), 781 (26 Pac., 167); *Sweatt* v. *Faville,* 23 Iowa, 321; *Krieschel* v. *Co. Com'rs,* 12 Wash., 435 (41 Pac., 186); *Braden* v. *Stumph,* 16 Lea, 581; *Presidio Co.* v. *Jeff Davis Co.* (Tex. Civ. App.), 77 S. W., 278; *Cocke* v. *Gooch,* 5 Heisk., 294; *People* v. *Wiant,* 48 Ill., 267; *Bouldin* v. *Lockhart,* 1 Lea, 195.

We refer specially to the case of *Braden* v. *Stumph, supra,* where every material question except one here pressed by appellants is carefully considered and decided adversely to their contention. The constitutional provision there under consideration recites: "Nor shall the seat of justice of any county be removed without the concurrence of two-thirds of the qualified voters

of the county." The court construed this clause to mean that
two-thirds of the voters must actually vote for the removal;
that active concurrence, and not passive acquiescence, was re-
quired; that the action of the county court in counting the
votes and declaring the result was not final and conclusive; and
that the chancery court properly entertained a bill of com-
plaint of sundry citizens and taxpayers enjoining the attempted
illegal removal. And upon a petition for a rehearing the court
again rejects the contention that the decision of the county court
in announcing the result was conclusive and that the courts
were without power of review, saying: "But the counting of
the vote of a popular election is merely the finding of a fact,
even if done by the legislature, and is not conclusive upon the
rights of third parties. And the real question is whether such
finding and announcement, whether legislative, judicial, or
ministerial, are conclusive upon individuals immediately affect-
ed by them in their constitutional rights, or may be reinvesti-
gated in the courts. . . . The constitutional provision in
regard to the removal of a county seat was intended to protect
the rights of property acquired by the location of a county seat,
and those property rights are analogous to the property rights
of a county over its territory. Either for this or some other
reason this court has heretofore repeatedly recognized these
rights, and allowed them to be asserted, even after an actual
removal of the county seat." We adopt this reasoning without
reservation.

The order of the board in question in the instant case nega-
tives the idea that the constitutional majority of two-thirds re-
quired in cases where county seats are to be removed to a point
more distant from the center of the county was cast therefor.
This of itself, in the absence of the alternative recital that Edna
was nearer the center of the county, is fatal to the validity of the
order attempting to remove the seat of justice to that point;
for upon the existence of one or the other of these two facts the
power and authority of the board of supervisors, its jurisdiction

of the subject-matter, was absolutely dependent. And this would be true even in the absence of proof that the total vote cast at the election for "removal" was less than two-thirds of the qualified electorate of the county. On this point it should be noted, what we have hereinbefore referred to, that the chancellor found as a matter of fact that less than two-thirds of the qualified electors voted for the removal. The record contains ample proof, both competent and admissible, to sustain this conclusion. The testimony of the election commissioner as to the number of names remaining on the registration books after all erasures for disqualification for legal causes had been made showed that considerably less than two-thirds of the qualified electorate voted for removal. The law imposes certain duties in reference to the registration books upon the board of election commissioners, intended to insure that they shall only contain names of those duly qualified to vote. Testimony showing the number of names remaining in such book after erasure therefrom of the names of all persons erroneously thereon, or who have died, removed, or become disqualified as electors, is competent, though not conclusive, proof of the number of qualified electors in the county. See *Hawkins* v. *Carroll County, supra;* Code 1892, § 3635. One of the board of election commissioners testified that after all erasures it is certain that there were over 1,221 registered voters at the date of the election, of whom 644, a bare majority, voted for "removal."

Finally, it is urged on behalf of appellants that, even conceding that the board of supervisors exceeded their authority in directing the removal of the seat of justice to Edna, still the order is valid in its recital that removal from Westville was carried, because it affirmatively shows that more than a majority of the electors participating in the election voted for removal, and this, both under the constitution and the act, operated to effect removal from the present site to some point hereafter to be selected by the voters. If this be sound, the decree herein must be reversed, and the cause remanded, with direction to the

board of supervisors to order another election, to determine at which one of the several competing points the county site shall be permanently located. It is true that the act empowering the board to order an election does contemplate the possibility of holding several elections to determine the relocation of the county site. It is also true that, if "removal" received the number of votes required by the constitution, it would have been proper for the board to order an election simply to decide between competing points. But under the facts of this particular case this cannot avail the appellants, for the manifest reason that only one point was voted for at the election—namely, Edna—and that, according to the proof, is more distant from the center of the county than the present location of the county site. In order for removal to carry in favor of a named point, the same constitutional majority would be required to make any change of the county site that would be necessary to move it to the particular place voted for; otherwise we would have the anomalous condition of a change authorized by a mere majority of those participating in the election, and therefore necessarily toward the center of the county—in fact, effecting a relocation at a point more distant from the center; thus, in effect, abrogating the constitutional requirement. The argument is faulty, in our judgment, in assuming that a county site can be ordered removed by a majority vote of those participating in the election, and then, at a subsequent election, the relocation fixed at a point more distant from the center of the county. Nor can this be overcome by saying that at a subsequent election the choice for the location of the seat of justice can be restricted to points nearer the center of the county than the present site. The insuperable obstacles to this course are several: (1) The law authorizing the election provides that at the election to determine "point of location only" "the two points which received the highest number of votes at the first election shall be submitted to be voted upon." In the instant case this plain mandate cannot be followed, because there are no two competing points that

received votes at the first election. (2) To move the county site to the only place voted for at the first election would not be a move towards the center of the county, while the vote cast only authorized a removal, if at all, on condition that such move should be to a point nearer the center. (3) The act under consideration expressly recites that, if the seat of justice be moved, it must be to "some convenient point on the Gulf & Ship Island Railroad." While, so far as the proof shows, and referring to the general course of the railway as indicated on the maps in evidence, it is doubtful if there is any point on said line of railway nearer the geographical center of the county than is Westville, if this be true, and appellants' contention on this point be sustained, and were we to hold that removal from Westville had carried, and remand the cause, and direct another election to be held to decide between competing points on the Gulf & Ship Island Railroad, we would be in the position of having ordered an election to be held to locate a new county site, when in point of fact, under the express terms of the act authorizing the election, there would be no point eligible to be voted for, because no point on the Gulf & Ship Island Railroad would be nearer to the center of the county—the only way in which a removal had been authorized by the vote of the electors. And, at all events, the selection of a location would necessarily be confined to points not voted for and not competing for the location. This could only be done by flagrantly violating the provisions of the act now under consideration.

This brings us to the consideration of another serious question in the case—one which, not being presented, and being constitutional in its nature, we are forbidden by the recognized canon of decision to decide on this appeal, and yet one which, in view of the public interest involved in this matter, we are not content to pass over unnoticed. And we propound to counsel, as worthy of their serious consideration, the query: Is or is not ch. 149, p. 201, Acts 1900, under which this election was held, unconstitutional and void? For this reason: The constitutional provision

leaves the decision of the question of the removal and relocation of the county site solely and absolutely to the electors of the county.  As the electors can alone decide whether the county site shall be moved at all, and, if so moved, whether towards or away from the center of the county, was it or not the constitutional design that their choice of location should be left untrammeled and unrestricted?  So that they, being most deeply concerned in the welfare of the county, taking into consideration natural conditions, waterways, density of population, highways, bridges, means of transportation, and the manifold incidents which would necessarily sway an elector's judgment, might have absolute freedom of choice in determining what location of a county site would best conserve the public interest and be more conducive to the general convenience.  If these inquiries can only be correctly answered in the affirmative, then what power had the legislature to restrict the voters in the selection of a county site to a point on the Gulf & Ship Island Railroad?  If the electors of Simpson county had desired to move their county site to any particular portion of or point in the county, did the legislature have the authority to deny them that right by providing that the county site, if moved, could only be relocated at some point on the railroad named?  Without expression of opinion further than hereinbefore indicated, we suggest, if further action in regard to the attempted removal of the county site be contemplated, the advisability of procuring another legislative enactment which shall leave the electors of the county at liberty to relocate their county site, if they should so desire, without any limitations or restrictions as to place or location.

It follows, from the views that we have hereinbefore announced, that the action of the board of supervisors of Simpson county in passing the order directing the removal of the county site to Edna was void; wherefore the decree of the chancery court is affirmed in all respects, save that the board of supervisors of Simpson county are hereby granted six months from date of the filing of the mandate in the court below in which to

make necessary repairs in the courthouse at Westville and return all records of said county to that place. In view of the doubt and confusion which we are told has arisen in regard to the validity of judicial action taken subsequent to the attempted location of the county site at Edna, we state that all such action is as valid and regular as though held in the courthouse at the regular county site.

*Decree affirmed, and injunction made perpetual.*