[No. 27054. Department One. June 9, 1938.].

LEE MORRIS, *Appellant*, v. BOARD OF COUNTY COMMISSIONERS OF ASOTIN COUNTY *et al.*, *Respondents.*[1]

*C. A. McCabe,* for appellant.

*John C. Applewhite* and *Homer L. Post,* for respondents.

SIMPSON, J.—This appeal from a judgment of the superior court of Asotin county presents the question of the validity of an election held to determine the removal of the county seat.

In the summer of 1936, the courthouse in the town of Asotin, county seat of Asotin county, was totally destroyed by fire. Thereafter, on proper petition, the

[1]Reported in 80 P. (2d) 414.

question of removal of the county seat from Asotin to the city of Clarkston was submitted to the voters of Asotin county at the general election held November 3, 1936. The proposition was submitted in accordance with Rem. Rev. Stat., §§ 3998 to 4005 [P. C. §§ 1847 to 1854], inclusive, § 4005 [P. C. § 1854], reading as follows:

"When an election has been held and no one place receives three-fifths of all the votes cast at such election on such question, the former county seat shall remain the county seat, and no second election must be held within four years thereafter."

May 6, 1937, the board of commissioners, properly in session, proceeded to canvass the returns of the election, having before it for consideration the precinct election returns. From such returns, the board declared the result of the election to have been 1,915 in favor of removal and 1,291 against removal, and declared that the county seat remained in the town of Asotin.

Included in the election returns considered by the board were the precinct returns from West Asotin precinct, which consisted of a poll book and attached certificates. The returns from this precinct show that none of the persons offering to vote signed the poll book and identified himself or herself as a registered voter by so signing. However, the evidence shows that those electors presenting themselves were identified by the election officials. The returns from West Asotin precinct showed 13 in favor of removal and 141 votes against removal, and if these returns were properly considered, the result was as declared by the board. Otherwise, the declaration of the board would have to be in favor of removal of the county seat.

The case was submitted to the court upon the facts

just related, and judgment was rendered dismissing the action.

Appellant contends that the court erred in dismissing the action after it appeared that the votes from West Asotin precinct were counted and considered by the county commissioners in ascertaining the results of the election, and calls our attention to the case of *Rickey v. Williams*, 8 Wash. 479, 36 Pac. 480, and *Krieschel v. Board of Commissioners*, 12 Wash. 428, 41 Pac. 186. These cases, however, are not determinative of the question presented in the case at bar.

In the *Rickey* case, it appeared that the petition for removal contained less than one-third of the number of people voting at the last general election required by statute as the requisite number necessary to authorize the board of county commissioners to submit the question to the people. The court held that the commissioners had never obtained jurisdiction by proper petition to order the submission of the question to popular vote, and because of that fact enjoined the removal of the county seat. The court went no further than to hold that it had jurisdiction to interfere with the action of the board when it appeared that the commissioners had not followed the plain direction of the legislature.

In the *Krieschel* case, it was found that a majority of the board had declared the result of an election to remove a county seat without having had a meeting or making an examination of the returns from the poll books. The court again held that the board is required by law to follow the directions of the statute, and that, the result of the election not having been ascertained, the pretended canvass was absolutely void.

In the case at bar, there is no charge that, under the petition, the question of the removal of the county seat was not referable to the voters, or that a meeting was not held to examine the returns, but simply that, in

following the law, they acted improperly in ascertaining the number of votes cast at the election.

Respondents urge that the removal of a county seat is a political or public question, and not a judicial one; and that the court has no jurisdiction of the subject matter of this action. With respondents' contention, we are in accord.

We have consistently held that the location or removal of a county seat is a political or public question and, in the absence of a statute giving the court jurisdiction of such matters, it will not interfere with the board of county commissioners when the board follows the directions of the statutes.

In the early case of *Parmeter v. Bourne,* 8 Wash. 45, 35 Pac. 586, 757, the court said:

"If, then, the removal of the county seat is a political question (a proposition which cannot be seriously denied), the regulation and control of which under our form of government are within the exclusive jurisdiction of the legislative department, it follows from the logic of *State v. Jones, supra,* [6 Wash. 452, 34 Pac. 201] that the state of facts, properly certified to by the tribunal, solely empowered by the legislature to pass upon the questions involved, must be taken as conclusive. The legislature has made provisions for the determination of these facts. In these provisions it did not see fit to provide for any review or investigation by the courts, and the courts, therefore, are without authority to act in the premises."

That rule was also approved in the case of *Heffner v. Board of County Commissioners,* 16 Wash. 273, 47 Pac. 430, as follows:

"But where the legislature have devolved upon a particular tribunal or board the duty of ascertaining, declaring and publishing the result of an election to determine a special question such as the removal of a county seat, it would seem to have been their intention that such tribunal, and no other, should finally deter-

mine such result, and they cannot discharge their duty without exercising their judgment as to the matters to be determined. All the courts of general jurisdiction can do, in cases of this character, is to ascertain whether the tribunal or board has proceeded according to the directions of the statute defining their duties, and to declare their proceedings ineffectual and void if they have departed from such directions. . . .

"But in this case it appears that the board, or at least a majority of its members, received and 'compared' the returns and ascertained the number of legal votes cast on the proposition and declare the result, and if they arrived at a wrong conclusion we know of no legal method whereby their act, in that regard, can be reviewed by the courts."

See, also, *Mann v. Wright,* 81 Wash. 358, 142 Pac. 697.

In *State ex rel. Maurer v. Superior Court,* 122 Wash. 555, 211 Pac. 764, it appeared that an action was brought to enjoin the county commissioners from canvassing the returns on the question of the removal of the county seat on account of fraudulent voting, irregularities, and misconduct. We said:

"The county commissioners have exclusive authority to canvass the returns of the election, . . . and the court is clearly without jurisdiction to control their action or review the result of their determination so long as they proceed according to the directions of the statute."

In the case at bar, it appears that the board received all of the returns and determined that all of the votes, as shown in the poll books to have been cast upon the question, should be counted, and the board declared the result. The court is without power to inquire into the board's manner in arriving at the result.

If the board had refused to make a canvass in good faith of the returns, the court could compel it so to act, but can go no further in directing how the board shall act. The legislature has devolved upon the board of

county commissioners, acting as a canvassing board of the returns of a vote of the county seat election, the duty of receiving and comparing returns and ascertaining the result thereof. Consequently, no other tribunal, judicial or otherwise, can exercise that power.

In our opinion, the superior court properly decided that it did not have the right to review the actions of the board of county commissioners.

The judgment is affirmed.

HOLCOMB, MAIN, BLAKE, and GERAGHTY, JJ., concur.