FILED
COURT OF APPEALS
DIVISION II

2013 AUG 20 PM 12: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| ROBERT LISLE HALE, Personal Representative of the ESTATE OF LISLE HALE, deceased; CLARA HALE, surviving spouse of LISLE HALE; ROBERT L. HALE; DONALD HALE; and TRICIA HALE,<br><br>                    Appellants,<br><br>     v.<br><br>BRIDGE BUILDERS, LTD.; MINDI R. BLANCHARD and JOHN DOE BLANCHARD; BRENDA S. CARPENTER and JOHN DOE CARPENTER; JANET WATRAL and JOHN DOE WATRAL; MICHAEL R. HASTINGS and JANE DOE HASTINGS; and MICHAEL R. HASTINGS, P.S.,<br><br>                    Respondents. | No. 43265-0-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, C.J. — The Hale family appeals the summary dismissal of their case. The Hales, a family consisting of two elderly adults and their three adult children, sued Bridge Builders, a company that provides personal services to elderly people. The adult children placed their elderly parents in an assisted living facility. Because the parents did not want to move, they became upset and, with the help of Bridge Builders, made plans to move back home. About a week later, the adult children convinced their parents that the decision to move back home was financially unsound and the move was cancelled. The Hales sued Bridge Builders and a

registered nurse at the assisted living facility, seeking declaratory judgments and a variety of tort claims. The trial court dismissed all of the Hales' claims on summary judgment. We affirm.

## FACTS

Lisle and Clara Hale, an elderly couple, lived at their home in Sequim, Washington in 2008. Lisle and Clara[1] have three adult children: Tricia, Donald, and Robert. Tricia lived with her parents and managed their care for many years. Donald held durable powers of attorney for his parents, and Robert was named as the successor attorney-in-fact.

In 2007, Lisle's and Clara's health deteriorated. They became increasing frail and suffered from dementia. By March 2008, Lisle, who was 86 years old, and Clara, who was 90 years old, required round-the-clock care. At about this time, the family decided Lisle should be moved to an assisted living facility. They moved Lisle to Sherwood Assisted Living on April 4, 2008. Lisle did not want to move and was upset.

Shortly thereafter, the family determined that Clara should be moved to Sherwood as well. Using a ruse, the children moved Clara to Sherwood on June 3. Family members told Clara that she was going to Sherwood to have lunch with Lisle. The Hale children told Janet Watral, the director at Sherwood who was also a registered nurse, that Clara would likely be upset. The next day, Tricia and Donald went to Sherwood to visit and deliver medication for Clara. They were asked to wait and talk to Watral first. Watral told them that Lisle and Clara

---

[1] Because members of the Hale family share the same last name, we refer to them by their first names for clarity, intending no disrespect.

2

were irate and had hired a lawyer. Watral told Tricia and Donald that it would be best if they not visit their parents. That day, Lisle and Clara met an attorney, Michael Hastings.[2]

On June 5, Hastings contacted Mindi Blanchard, the owner of a company called Bridge Builders, Ltd. Bridge Builders provides personal and assisted living services to the residents of Clallam County. Bridge Builders' website listed a wide variety of services, including:

- Advocacy/Mediation
- Daily Reminders
- Daily Check-in Calls
- Bill Paying and Financial Organizing
- Monthly Checkbook Reconciliation
- Reconcile Your Medical Insurance
- Organize Caregiver Assistance
- Coordinating Care
- Peace of Mind Program
- Personal Shopper
- Transportation to Appointments
- Neighborhood Caregiver Services
- Take Your Pet to the Groomer or Vet
- Outings; Family Liaison
- Letter/Note Writing
- Mail Sorting and Filing
- Telephone Call Assistance
- Computer Assistance
- Help Activate Your LTC [(long-term care)] Insurance
- Notary Service
- Homecoming
- Residential Placement Assistance
- Meals Delivered to Your Home
- Friday Flowers
- Power of Attorney
- Certified Professional Guardian
- Representative of the Estate
- Educational Workshops

---

[2] Bridge Builders asserts that they met Hastings the next day on June 5. Whether it was June 4 or June 5, the date is not material to the issues presented in this appeal.

- Continuing Education Conference

Clerk's Paper (CP) at 325-30.

The website stated that Bridge Builders does not "provide personal care" and that it is "not a caregiving agency." CP at 335-36.

Lisle and Clara had contacted Hastings seeking to change their power of attorney from their children. Hastings asked Blanchard if she would act as Lisle and Clara's new attorney-in-fact. Blanchard met with Lisle, Clara, and Hastings at Sherwood Assisted Living on June 5. Lisle and Clara told her that their children tricked them into moving to Sherwood Assisted Living and that they wanted to move back into their home. They were also concerned that their children were accessing their money. Blanchard told Lisle and Clara that Bridge Builders could assist them in moving back home. Lisle and Clara agreed that they wanted Blanchard to act as their attorney-in-fact. On June 6, they executed new powers of attorney and revoked the old ones. Lisle also called Blanchard and asked her to change the financial accounts so that his children would no longer have access.

Blanchard visited Lisle and Clara again on June 9 and talked about moving home. Later, Blanchard went to Washington Mutual Bank, where Lisle and Clara banked. On June 10, Blanchard brought the elderly Hales to the bank and changed their accounts. They discussed planning the move for June 12. Because Lisle told Blanchard that he did not want his children accessing the house, Blanchard met a locksmith and had the locks changed. On June 10 and 11, Bridge Builders contacted private caregivers and in-home care agencies to provide in-home care for Lisle and Clara.

On June 12, Donald Hale went to visit his parents. At some point that day, Lisle, Clara, and Donald spoke with Robert over the phone, and Donald recorded the conversation. Lisle and Clara decided it was not in their financial interest to move back home. Later that day, Brenda Carpenter, an employee at Bridge Builders, went to talk to Lisle and Clara to prepare them for the move. When she arrived, Donald told her that Lisle and Clara would not be moving. Bridge Builders canceled the moving plans.

The Hales[3] sued Bridge Builders, Mindi Blanchard, Brenda Carpenter, Janet Watral, and Michael Hastings[4] in April 2009. The Hales sought declaratory judgments that Bridge Builders was an "in-home services agency" required to be licensed under chapter 70.127 RCW and that Blanchard, Carpenter, and Bridge Builders were prohibited from serving as attorney-in-fact for either Lisle or Clara. The Hales also sought damages for: violations of the vulnerable adults act[5] and the Consumer Protection Act[6]; malpractice by Blanchard, Carpenter, Bridge Builders, and Watral; interference with the Hale family; negligent infliction of emotional distress; and outrage.

In December 2011, Bridge Builders moved for summary judgment of all of the Hales' claims. The trial court granted their motion. Later, the trial court entered an amended order and memorandum making the dismissal of the Hales' claims applicable to Watral. The Hales appeal the dismissal of their case on summary judgment.

---

[3] The plaintiffs in the case are Robert Hale, Donald Hale, Tricia Hale, the estate of Lisle Hale through its personal representative Robert Hale, and Clara Hale.

[4] Hastings was dismissed through an agreed stipulation and is no longer a party in this case.

[5] Chapter 74.34 RCW.

[6] Chapter 19.86 RCW.

5

ANALYSIS

A.   *Summary Judgment Standard of Review Applies*

The Hales argue, without citation to authority, that the trial court should have applied the standards for dismissal under CR 12(b)(6) rather than the standards for summary judgment under CR 56. This argument is meritless. The defendants moved for summary judgment, thus, summary judgment standards apply.

We review summary judgments de novo, engaging in the same inquiry as the trial court. *Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Summary judgment is appropriate where there are no issues of material fact. CR 56(c). A defendant in a civil action is entitled to summary judgment if he can show that there is an absence or insufficiency of evidence supporting an element that is essential to the plaintiff's claim. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). In such a situation, there can be no genuine issue as to any material fact, because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Young*, 112 Wn.2d at 225. To survive a motion for summary judgment, a nonmoving party must set forth specific facts showing that a genuine issue exists. *Young*, 112 Wn.2d at 225-26. The nonmoving party may not rely on speculative or argumentative assertions that unresolved factual issues remain. *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 602, 200 P.3d 695 (2009). When reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *Cornerstone Equipment Leasing, Inc. v. MacLeod*, 159 Wn. App. 899, 902, 247 P.3d 790 (2011).

B.     *Standing Not Waived*

The trial court dismissed the Uniform Declaratory Judgments Act[7] claims, ruling that the Hales did not have standing. The Hales argue that the trial court should not have ruled on the issue of standing, asserting that the defendants waived the issue by not pleading standing as an affirmative defense. We reject the Hales' argument that standing is an affirmative defense that is waived unless pleaded.

In support of their argument, the Hales cite to the general rule that a party must plead affirmative defenses or have the defense waived. *See* CR 8(c) ("a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense"). Their argument is undeveloped. They do not provide supporting authority or a reason why standing should be considered an affirmative defense that is waived if not pleaded. Even assuming standing is an affirmative defense, the Hales do not argue prejudice. *See Mahoney v. Tingley*, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975) (failure to plead an affirmative defense is harmless if it does not affect substantial rights of the parties). We do not review issues where inadequate argument has been made. *State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004). The Hales' argument is insufficient and we decline to address whether Bridge Builders waived the issue of standing by not pleading it as an affirmative defense.

Consequently, we do not address Bridge Builders' argument that standing cannot be waived because standing to sue under the Declaratory Judgments Act is a "jurisdictional"

---

[7] Chapter 7.24 RCW.

7

No. 43265-0-II

question that can be raised at any time. We note, however, that this premise, though recognized in Washington case law, may be erroneous.[8]

---

[8] The characterization of standing to sue under the Declaratory Judgments Act as "jurisdictional" can be traced to *Washington Beauty College, Inc. v. Huse*, 195 Wash. 160, 166, 80 P.2d 403 (1938). There, our Supreme Court addressed the issue of the plaintiff's "right to sue" under the Declaratory Judgments Act for the first time on appeal and characterized the question as involving the "jurisdiction" of the court and could be raised at any time. *Washington Beauty Coll.*, 195 Wash. at 166. But as our Supreme Court has more recently recognized, "jurisdiction" is "the fundamental power of courts to act." *ZDI Gaming, Inc. v. Washington State Gambling Comm'n*, 173 Wn.2d 608, 616, 268 P.3d 929 (2012). Article IV, section 6 of the Washington Constitution does not exclude any causes from the broad jurisdiction of superior courts, meaning Washington courts have few constraints on their jurisdiction. WASH. CONST. art IV, § 6 ("The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court."); *Krieschel v. Bd. of Snohomish County Comm'rs*, 12 Wash. 428, 439, 41 P. 186 (1895) ("it is manifest that it was not the intention of the framers of this § 6 to exclude any sort or manner of causes from the jurisdiction of the superior court."). Subject matter jurisdiction should not be confused with a court's authority to rule in a particular manner. *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 208, 258 P.3d 70 (2011). The subject matter jurisdiction of Washington courts is not so "'fleeting and fragile.'" *Housing Authority of City of Seattle v. Bin*, 163 Wn. App. 367, 376, 260 P.3d 900 (2011) (quoting *Sprint Spectrum, LP v. Dep't of Revenue*, 156 Wn. App. 949, 965, 235 P.3d 849 (2010) (Becker, J., concurring)). If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction. *Marley v. Dep't of Labor and Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994). Consistent with this view, we have recognized that, in Washington courts, a plaintiff's lack of standing is not an issue of subject matter jurisdiction. *Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, ___ Wn. App. ___, 298 P.3d 99, 106 (2013); *Ullery v. Fulleton*, 162 Wn. App 596, 604, 256 P.3d 406, *review denied*, 173 Wn.2d 1003 (2011). Noting that it has held that standing can be waived outside the context of the Declaratory Judgments Act, our Supreme Court left open the question of whether Washington should retain the rule that standing may be raised for the first time on appeal in declaratory judgment actions. *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 203 n.4, 11 P.3d 762 (2000). By doing so, the court necessarily implied that standing to sue in a declaratory judgment action is not actually an issue of subject matter jurisdiction because subject matter jurisdiction may be raised at any time.

8

### C.      *No Standing To Assert a Declaratory Judgment Action*

The Hales sought declaratory judgments that Bridge Builders was required by statute to be licensed by the Washington Department of Health as an "in-home services agency" and that, as a licensee, Bridge Builders was forbidden from serving as attorney-in-fact for Lisle and Clara. They now argue that the trial court erred when it ruled that the Hales lacked standing to bring their Declaratory Judgments Act claims and that their claims were nonjusticiable. We disagree.

The common law doctrine of standing prohibits a litigant from raising another's legal rights. *Grant County Fire Prot. Dist. No. 5 v. City of Moses*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). To have standing in a Declaratory Judgments Act action, "a party must (1) be within the zone of interests protected by statute and (2) have suffered an injury in fact, economic or otherwise." *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 186, 157 P.3d 847 (2007). We conclude that the Hales do not have standing because they do not satisfy the zone of interests requirement.[9]

When evaluating whether a party's interests are within the zone of interests a statute protects, a court looks to the statute's general purpose. *Branson v. Port of Seattle*, 152 Wn.2d 862, 876 n.7, 101 P.3d 67 (2004). If the statute was not designed to protect a party's interests, it is not within the zone of interests. *Grant County*, 150 Wn.2d at 803.

---

[9] It is uncontested that Lisle and Clara's children received no services at all from Bridge Builders. We reject their contention that as a "family," they have associational or representational standing. *See American Legion Post #149 v. Washington State Dep't. of Health*, 164 Wn.2d 570, 595-96, 192 P.3d 306 (2008) (applying the associational standing test from *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). We also reject the notion that there is an association in this case. As the complaint states, this lawsuit was brought by five separate people. It was not brought in the name of the "Hale family." While we refer to the Hales, this is for the sake of brevity.

No. 43265-0-II

The statutes at issue are under chapter 70.127 RCW. An "in-home services agency" or a "home care agency" must be licensed. RCW 70.127.020(1),[10] (2).[11] If a person provides "home care services," then the person is an "in-home services agency" or "home care agency." RCW 70.127.010 (5),[12] (14).[13] "Home care services" means

> [n]onmedical services and assistance provided to ill, disabled, or vulnerable individuals that enable them to remain in their residences. Home care services include, but are not limited to: Personal care such as assistance with dressing, feeding, and personal hygiene to facilitate self-care; homemaker assistance with household tasks, such as housekeeping, shopping, meal planning and preparation, and transportation; respite care assistance and support provided to the family; or other nonmedical services or delegated tasks of nursing under RCW 18.79.260(3)(e).

RCW 70.127.010(6). Not everyone providing "home care services" must be licensed. The legislature has provided many exemptions. RCW 70.127.040. In short, absent an exception, a person providing "home care services" must be licensed.

Chapter 70.127 RCW was enacted to protect the ill, disabled and elderly who need assistance with personal care. LAWS OF 1988, ch. 245, § 1; *Cummings v. Guardianship Servs. of*

---

[10] "[A] license is required for a person to advertise, operate, manage, conduct, open, or maintain an in-home services agency." RCW 70.127.020(1).

[11] "An in-home services agency license is required for a nursing home, hospital, or other person that functions as a home health, hospice, hospice care center, or home care agency." RCW 70.127.020(2).

[12] "'In-home services agency' means a person licensed to administer or provide home health, home care, hospice services, or hospice care center services directly or through a contract arrangement to individuals in a place of temporary or permanent residence." RCW 70.127.010 (14).

[13] "'Home care agency' means a person administering or providing home care services directly or through a contract arrangement to individuals in places of temporary or permanent residence." RCW 70.127.010(5).

No. 43265-0-II

*Seattle*, 128 Wn. App. 742, 750, 110 P.3d 796 (2005). As the legislative intent section of the statute makes evident, the "legislature was concerned about the virtual invisibility of home care providers, and the attendant risks to their vulnerable clients." *Cummings*, 128 Wn. App. at 750; RCW 70.127.005.[14] One way the legislature addressed this problem was by requiring home care agencies serving these vulnerable populations to be licensed and to abide by minimum standards. *Cummings*, 128 Wn. App. at 750. Based on this statement of intent and our interpretation of it in *Cummings*, we hold that the zone of interests protected by the statute is that of home care services.

In its memorandum opinion, the trial court determined that Bridge Builders did not provide home care services to the plaintiffs. Because receiving home care services is essential to fall within the zone of interests protected by chapter 70.127 RCW, a lack of evidence that Bridge Builders provided home care services to the Hales is determinative.

---

[14] The legislative intent section states:

> The legislature finds that the availability of home health, hospice, and home care services has improved the quality of life for Washington's citizens. However, the delivery of these services bring risks because the in-home location of services makes their actual delivery virtually invisible. Also, the complexity of products, services, and delivery systems in today's health care delivery system challenges even informed and healthy individuals. The fact that these services are delivered to the state's most vulnerable population, the ill or disabled who are frequently also elderly, adds to these risks.

> It is the intent of the legislature to protect the citizens of Washington state by licensing home health, hospice, and home care agencies. This legislation is not intended to unreasonably restrict entry into the in-home service marketplace. Standards established are intended to be the minimum necessary to ensure safe and competent care, and should be demonstrably related to patient safety and welfare.

RCW 70.127.005.

11

When viewing the evidence in the light most favorable to the plaintiffs, reasonable minds can only conclude that Bridge Builders did not provide home care services. None of the evidence creates an issue of material fact on whether Bridge Builders provided home care services to the Hales. What the evidence shows is that Bridge Builders made arrangements for Lisle and Clara to move back to their house. As the arrangements for the move were being made, Lisle and Clara terminated Bridge Builders' services and did not move back home.

Reading RCW 70.127.010(6) in isolation, the evidence arguably raises an issue of material fact on whether Bridge Builders provided "homemaker assistance" ("household tasks, such as housekeeping, shopping, meal planning and preparation, and transportation"). RCW 70.127.010(6). However, when read with the "case management" services exemption in mind, the evidence does not raise an issue of material fact. RCW 70.127.040(14) provides that a person providing "case management services" is not subject to regulation under the act. "'Case management' means the assessment, coordination, authorization, planning, training, and monitoring of home health, hospice, and home care, and does not include the direct provision of care to an individual." RCW 70.127.040(14). There is no evidence that Bridge Builders provided direct home care to the Hales.

The Hales argue that they need not have received home care services to have standing; that receiving advertising is sufficient. Under the act, "a license is required for a person to advertise, operate, manage, conduct, open, or maintain an in-home services agency." RCW 70.127.020(1). To this end, the Hales assert that Bridge Builders was either advertising or maintaining an in-home services agency and, therefore, was required to be licensed. The Hales cite declarations to support this point. Among other things, one declaration has copies of pages

12

from Bridge Builders' website. As we discuss above, the zone of interests protected by the statute is the receiving of care. Receipt of advertising may not be within the zone of interests protected by the statute. But even assuming the statute protects against receiving advertising for home care services from unlicensed providers, reasonable minds could not conclude that Bridge Builders advertised home care services as defined by chapter 70.127 RCW. The advertising only shows that Bridge Builders was providing "case management" services. The advertising on the website says that Bridge Builders is not a "caregiving agency." Rather they assist "clients in signing up with a reputable caregiving agency." CP at 335. Consistent with this advertising, invoices show that Bridge Builders had contacted a caregiving agency and private caregiver in planning Lisle and Clara's move back home. No evidence shows that Bridge Builders planned to provide direct home care to Lisle or Clara. Moreover, it is unclear that Lisle and Clara even received advertisements from Bridge Builders. Lisle and Clara were introduced to Bridge Builders through Hastings, the attorney they consulted in their effort to move back home. We reject the Hales' argument on this point.

In connection with their argument that they have standing, the Hales argue that if Bridge Builders was required to be licensed, Bridge Builders and its employees would have been forbidden by RCW 70.127.150 from serving as attorneys-in-fact for Lisle or Clara. Their reading of the statute is wrong. RCW 70.127.150 states: "No licensee, contractee, or employee may hold a durable power of attorney on behalf of any individual *who is receiving care from the*

13

*licensee.*" (Emphasis added). The evidence does not show that Lisle or Clara received care from Bridge Builders. Thus, Bridge Builders cannot have violated this prohibition.[15]

Because there is no evidence that home care services were provided, the Hales fall outside the statute's zone of interests. Their declaratory judgment actions were properly dismissed. Because the Hales fall outside the statute's zone of interests, we do not address the injury in-fact requirement or the related justiciability question.

D.     *Discovery*

The Hales next argue that the trial court erred when it denied their motion for discovery of other client information and granted Bridge Builders' motion for a protective order regarding this discovery. We disagree.

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." CR 26(b)(1). "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." CR 26(b)(1). A trial court may grant a protective order upon a showing of "good cause" by the party from whom discovery is sought in order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. CR 26(c). We review discovery rulings for abuse of discretion. *T.S. v. Boy Scouts of America*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006). Discretion is abused if it

---

[15] In their reply brief, the Hales argue for the first time that if Bridge Builders was required to be licensed, the Washington Administrative Code would have imposed requirements on Bridge Builders that the Hales would have benefited from. We do not consider arguments that are made for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

is manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. *T.S.*, 157 Wn.2d at 423.

The Hales sent interrogatories and requests for production to Bridge Builders concerning the services Bridge Builders provided to clients other than Lisle and Clara. Bridge Builders refused to answer many of the requests, claiming that client names and documents were confidential and that the requests were overly broad and unduly burdensome and were not reasonably calculated to lead to the discovery of admissible evidence. On the same day that Bridge Builders moved for summary judgment, Bridge Builders also moved for a protective order under CR 26(c) in response to discovery requests from the Hales.

The Hales cannot establish standing or the elements of their claims based on services Bridge Builders provided to other clients. Although evidence of the services of other clients could have possibly revealed that Bridge Builders should have been licensed, this does not make the material relevant or reasonably calculated to lead to the discovery of admissible evidence. The Hales' claims turn on whether they themselves received home care services from Bridge Builders. The trial court did not abuse its discretion in granting the protective order or denying discovery to the Hales, and their argument fails.

E.     *Vulnerable Adults Act Claim Properly Dismissed*

The Hales next argue that the trial court erred by dismissing their vulnerable adult act claims. We disagree.

The Hales alleged a vulnerable adults cause of action under RCW 74.34.200. Under that statute,

> a vulnerable adult who has been subjected to abandonment, abuse, financial exploitation, or neglect either while residing in a facility or in the case of a person

15

residing at home who receives care from a home health, hospice, or home care agency, or an individual provider, shall have a cause of action for damages on account of his or her injuries, pain and suffering, and loss of property sustained thereby.

RCW 74.34.200 (1). The trial court dismissed this claim, reasoning that the Hales did not set forth any specific facts that gave rise to the conclusion that the elderly Hales were abused, financially exploited, or neglected.

The Hales assert that the defendants "abused" Lisle and Clara by inappropriately isolating them from their adult children. Under the pertinent statutes, "abuse" includes "mental abuse," which is defined to include "inappropriately isolating a vulnerable adult from family, friends, or regular activity . . . ." RCW 74.34.020(2) and .020(2)(c). In support, the Hales cite to two pages in a declaration from Tricia.

The Hales do not identify which specific facts in this declaration raise an issue of material fact. According to the declaration, Tricia and Donald went to visit Lisle and Clara on June 4, 2008, at Sherwood Assisted Living. When they arrived, Watral, the director of the facility, told them that Lisle and Clara were irate, that they had hired a lawyer, and that it would not be a good idea to visit them. She told them to go home; they complied. A couple of days later, Donald and Tricia learned that their parents' durable powers of attorney had been revoked and new ones were issued in favor of Blanchard. Bridge Builders started the process of planning the move back home. Neither Bridge Builders nor Watral consulted the adult Hale children about this plan.

Although Watral advised Tricia and Donald that it would not be a good idea to see their parents, this does not mean there was inappropriate isolation. The Hales acknowledge that Lisle and Clara wanted to move home. And it is uncontested that their adult children were later able to

16

visit and talk with their parents. From this evidence, reasonable minds could not find that the defendants inappropriately isolated a vulnerable adult from family.

The Hales also assert that the defendants "acted to change the plans the Hales and their family had in place regarding the care of Lisle and Clara Hale." Br. of Appellant at 36. They argue this was "exploitation"[16] and qualified as "abuse." In support, they cite to a declaration from Blanchard, which contains a copy of a billing invoice from Bridge Builders, and recounts Bridge Builders' interactions with the Hales. Again, the Hales fail to explain how this supports their claim.

It is uncontested that the Hale children did not inform Lisle or Clara before moving them into Sherwood Assisted Living. Lisle was not told, until he arrived at Sherwood, that he was going to be moved into the facility. The adult children moved Clara to Sherwood and left it to Watral to explain to Clara and Lisle that Clara's move was permanent and why the move was necessary. In an effort to move back home, Lisle and Clara met with attorney Hastings, who introduced them to Bridge Builders. Lisle and Clara told Blanchard, the owner of Bridge Builders, that they had been tricked into moving to Sherwood and wanted to move back home. Attorney Hastings drafted new powers of attorney for Lisle and Clara, and Bridge Builders made plans to move Lisle and Clara back home. The only reasonable inference from this evidence is that Lisle and Clara decided they wanted to move back home and that Bridge Builders began to assist them in executing this plan. These facts are insufficient to establish "exploitation."

---

[16] "'Exploitation' means an act of forcing, compelling, or exerting undue influence over a vulnerable adult causing the vulnerable adult to act in a way that is inconsistent with relevant past behavior, or causing the vulnerable adult to perform services for the benefit of another." RCW 74.34.020(d).

17

The Hales next argue there was an issue of material fact as to whether there was "financial exploitation" of Lisle and Clara by the defendants. "'Financial exploitation' means the illegal or improper use of the property, income, resources, or trust funds of the vulnerable adult by any person for any person's profit or advantage other than for the vulnerable adult's profit or advantage." Former RCW 74.34.020(6) (2008).[17] In support, the Hales cite to declarations from Tricia and Robert. Again, they fail to explain how these declarations create any issue of material fact.

Robert's declaration attaches, as an exhibit, a transcription of a recorded conversation between Robert, Donald, Lisle, and Clara. The recording is dated June 12, 2008. The transcription shows that Lisle wanted to move back home but that he had not fully considered the costs that would be incurred by living at home. After considering their resources and the costs, Lisle and Clara agreed to stop the plan to move back home and to terminate their relationship with Bridge Builders. These facts do not show that the Hales were financially exploited. They show that Lisle and Clara wanted to move back home, but later changed their minds.

Because there is no issue of material fact, the trial court properly granted summary judgment on the vulnerable adult act claims.

F.      *Consumer Protection Act Claims Properly Dismissed*

The Hales next argue that the trial court erred when it dismissed their Consumer Protection Act claims on summary judgment. Again, we disagree.

---

[17] The Hales incorrectly cite to RCW 74.34.020(6)'s current language. We apply the statutes in effect at the time of the alleged acts. *See In re Estate of Haviland*, 177 Wn.2d 68, 75, 301 P.3d 31 (2013) ("Statutes are presumed to apply prospectively, absent contrary legislative intent.").

18

In a consumer protection action, the plaintiff must prove an unfair or deceptive act or practice, occurring in trade or commerce, impacting the public interest, which causes injury to plaintiff in his or her business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The trial court dismissed the Consumer Protection Act claim, ruling that the Hales failed to show evidence of injury to their business or property.

Without a showing of injury, there is no remedy under the Consumer Protection Act. *Ledcor Industries (USA), Inc. v. Mutual of Enumclaw Ins. Co.*, 150 Wn. App. 1, 12-13, 206 P.3d 1255 (2009). Under the Consumer Protection Act, an injury need not be great or quantifiable, but it must be an injury to business or property. *Ambach v. French*, 167 Wn.2d 167, 171-72, 216 P.3d 405 (2009). Personal injury damages are not compensable under the Consumer Protection Act. *Ambach*, 167 Wn.2d at 173.

Rather than specifically identify the alleged injury or injuries to their business or property, the Hales refer to a list of purported "instances of injury in fact." Br. of Appellant at 39. The Hales do not explain how these "injuries" constitute injuries to business or property. Of the items on the list, the only one that approaches qualifying as an injury to business or property is the claim that Lisle and Clara were billed for the services Bridge Builders provided. There is evidence in the record that Bridge Builders prepared an invoice for services rendered to Lisle and Clara. But nowhere in the record is there evidence that this invoice was actually sent to Lisle or Clara. The Hales also do not allege that they actually paid Bridge Builders, and there is no evidence in the record that they did so. Thus, this evidence does not raise an issue of material fact on injury.

The trial court correctly dismissed the Hales' Consumer Protection Act claim.

G.    *Malpractice Claims Properly Dismissed*

The Hales also asserted malpractice claims against the defendants. They now argue that the trial court erred when it dismissed the claims on the basis that the Hales failed to show how the alleged breaches proximately caused damage. We disagree.

A malpractice claim generally requires proof of four elements: duty of care, breach of that duty, damage, and proximate cause. *Falkner v. Foshaug*, 108 Wn. App. 113, 118, 29 P.3d 771 (2001) (describing elements of a legal malpractice claim).

The Hales do not explain how they were injured from the alleged breaches. In their memorandum in response to motions for summary judgment, the Hales merely stated that the "facts show that Plaintiffs were injured as a result of the failure of Defendants to meet the standards of care they are subject to." CP at 654. On appeal, the Hales similarly fail to explain how they were injured by alleged breaches. Unsupported assertions will not defeat a summary judgment motion. *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991). Thus, the Hales fail to meet their burden to survive the summary judgment motion and their malpractice claim was properly dismissed. *See Young*, 112 Wn.2d at 230 (affirming summary judgment in favor of defendants in medical malpractice action because the plaintiff did not present competent evidence regarding physicians' standard of care); *Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wn. App. 666, 680, 285 P.3d 892 (2012) (affirming summary judgment on negligence claim because defendant did not raise a genuine issue of material fact regarding damages) *review denied*, 176 Wn.2d 1019 (2013).

H.      *Interference with a Family Relationship*

The Hales next argue that the trial court erred when it dismissed their claim for interference with a family relationship. The Hales alleged a novel claim for "Interference with the Family of Lisle and Clara Hale." CP at 524. Washington has not recognized a cause of action for interference with a family relationship (also referred to as alienation of affections) where the interference is between adults and their adult children. The trial court dismissed the claim, ruling that the Hales did not show evidence of "loss of affection" or resulting damages, which the trial court assumed would be required elements of the claim. We hold the trial court did not err.

Although there is no Washington authority on this precise issue, we have recognized a cause of action for alienation of affection of a minor child. *Strode v. Gleason*, 9 Wn. App. 13, 510 P.2d 250 (1973). The elements of alienation of affection of a minor child are: (1) an existing family relationship, (2) a malicious interference with the relationship by a third person, (3) an intention on the part of the third person that such malicious interference results in a loss of affection or family association, (4) a causal connection between the third parties' conduct and the loss of affection, and (5) resulting damages. *Strode*, 9 Wn. App. at 14-15; *See also Babcock v. State*, 112 Wn.2d 83, 107-108, 768 P.2d 481 (1989).[18]

"The novelty of an asserted right and the lack of precedent are not valid reasons for denying relief to one who has been injured by the conduct of another." *Strode*, 9 Wn. App. at 17.

---

[18] The Washington Supreme Court has not yet recognized alienation of a child's affections as a cause of action. *See Babcock*, 112 Wn.2d at 107-08 (noting that it had not yet had occasion to recognize a cause of action for alienation of a child's affections, but held that plaintiffs could not establish causation as a matter of law).

But the Hales fail to meet their burden to produce any evidence of a "loss of affection" between the elderly Hales and their adult children, or other resulting damages.[19] We conclude the trial court properly dismissed the Hales' claim for interference with a family relationship on summary judgment.

I.      *Negligent Infliction of Emotional Distress Claim Properly Dismissed*

The Hales further argue that the trial court erred in dismissing their claim for negligent infliction of emotional distress. The trial court dismissed the claim on summary judgment, ruling that the plaintiffs failed to show objective symptomatology.

A plaintiff may recover for negligent infliction of emotional distress if he or she proves negligence, that is, duty, breach of the standard of care, proximate cause, and damage, and proves the additional requirement of objective symptomatology. *Kloepfel v Bokor*, 149 Wn.2d 192, 199, 66 P.3d 630 (2003). To satisfy the objective symptomatology requirement, "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 136 Wn.2d 122, 135, 960 P.2d 424 (1998). The Hales submitted no medical evidence to satisfy this requirement. Thus, the trial court's dismissal of this claim was proper.

J.      *Intentional Infliction of Emotional Distress (Outrage) Claim Properly Dismissed*

Finally the Hales alleged a claim for intentional infliction of emotional distress (outrage). They argue that the trial court erred when it dismissed the claim on summary judgment, ruling that the plaintiffs failed to show any conduct sufficient to sustain a cause of action for outrage. We disagree.

---

[19] More importantly, the Hales have inadequately briefed this issue. Inadequate briefing makes it impossible to further address this novel claim.

Intentional infliction of emotional distress requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel*, 149 Wn.2d at 195. "The claim must be predicated on behavior so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel*, 149 Wn.2d at 196 (quoting Grimsby v. Samson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)). "The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Saldivar v. Momah*, 145 Wn. App. 365, 390, 186 P.3d 1117 (2008).

The Hales failed to submit adequate evidence raising an issue of material fact to support a claim for outrage. Reasonable minds could only conclude the defendants' conduct was not sufficiently extreme and outrageous to result in liability. Bridge Builders briefly assisted the elderly Hales with their request to move back home. When they changed their minds, Bridge Builders stopped. There is no evidence that any of the defendants tried to move Lisle or Clara against their wishes. The defendants' conduct does not come close to satisfying the elements of outrage and the claim was properly dismissed. *See Spurrell v. Bloch*, 40 Wn. App. 854, 863, 701 P.2d 529 (1985) ("[P]laintiffs' affidavits simply do not put in issue material facts as to the elements of outrage.").

No. 43265-0-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Johanson, J.

_____
McCarthy, J.P.T.

24